STATE OF CONNECTICUT *v.* WALTER SCHOENBNEELT

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, JS.

Argued March 5—decision released May 25, 1976

*Michael A. Connor, Jr.,* for the appellant (defendant).

*Richard F. Banbury,* chief assistant state's attorney, with whom, on the brief, was *George D. Stoughton,* state's attorney, for the appellee (state).

BOGDANSKI, J. On a trial to a jury, the defendant, Walter Schoenbneelt, was found guilty of the crime of larceny in the first degree, in violation of § 53a-122 of the General Statutes. In his appeal from the judgment rendered, he has assigned error in the court's denial of his motion to suppress certain evidence, in its charge, and in its denial of his motion to set the verdict aside.

The statements of facts filed pursuant to §§ 631A and 632A of the Practice Book reveal that the state offered evidence to prove and claimed to have proved the following facts: On August 16, 1974, at 2:15 a.m., Henry E. Burt, Jr., a security officer at the Howard Johnson's Motor Lodge in Windsor Locks, observed a white Volkswagen van with New York license plates in the motel parking lot. At 5 a.m., he noticed that the van had been moved within the parking area. He approached the van and, with the aid of a flashlight, looked inside. He saw bed quilts, which he recognized as belonging to the motel, covering rectangular objects with sharp corners which he believed were television sets. He then went to the motel office and ordered the clerk to summon the Windsor Locks police. Upon his return to the parking lot, the van was gone.

While Burt was still in the parking lot, Officers Kenneth D'Arcy and John D. McSweegan of the Windsor Locks police department arrived. Burt told them what he had observed and gave them the registration number of the van. That information was relayed to a dispatcher, and the state police were requested to stop the van in connection with a larceny of linens.

Shortly after 5 a.m., State Police Trooper William C. Fredericksen received a dispatch to stop a white Volkswagen van with a specific New York registration relating to a larceny of linens in Windsor Locks. Fredericksen stopped the van near the Hartford-Wethersfield town line at 5:15 a.m. The defendant was operating the van, and one Joseph Kas was riding in the front seat as a passenger. The defendant produced a driver's license issued in a fictitious name. Trooper Chris Christopoulos then arrived on the scene, and was asked to check the van to ascertain whether any other persons were inside. Christopoulos reported that bed linens were in the van, with television sets apparently beneath them. The defendant and Kas were placed under arrest for larceny and were taken to the Windsor Locks police station.[1] The van was towed to the Windsor Locks police station, and it was found to contain eleven television sets and eleven bed linens which had been stolen from eleven rooms at the Howard Johnson's Motor Lodge.

A search of the defendant was conducted at the police station. As he was straightening his belt during the search, an object dropped to the floor

---

[1] Schoenbneelt and Kas were tried together. Both were convicted of larceny, and both have appealed to this court. The merits of their appeals are treated in separate opinions.

which he appeared to attempt to hide with his feet.
The object turned out to be a master key to several
rooms at the Howard Johnson's Motor Lodge.

The defendant claimed to have proved the fol-
lowing facts: On the morning of August 16, 1974,
he was hitchhiking from Boston to New York. At
4:30 a.m., he met Kas, a complete stranger, who
was also hitchhiking on route 91 to New York. At
5 a.m., a white Volkswagen van and another auto-
mobile stopped near them. The operator of the
van indicated that his wife was following him in
the other vehicle and was ill. He asked if one of
them would drive the van and indicated that he
would follow in the automobile. He stated that he
would return to the van when his wife felt better.
Since Kas said that he could not drive, the defendant
offered to do so. There was a curtain behind the
front seats of the van which blocked the defendant's
view of its interior. Shortly after the defendant
began to drive, the van was stopped by the state
trooper. Meanwhile, the man and woman following
in the car had disappeared. The defendant claimed
that he had no knowledge of the van's contents and
that he never had possession of a key to the Howard
Johnson's Motor Lodge in Windsor Locks.

The defendant initially claims that the court
erred in denying his motion to suppress evidence
of the stolen television sets and linens. He contends
that the search of the van was in violation of his
right to be free from unreasonable searches as
guaranteed by the fourth amendment of the federal
constitution and article first, § 7, of the state con-
stitution.

"[A]utomobiles, because of their mobility, may
be searched without a warrant upon facts not jus-

tifying a warrantless search of a residence or office." *Chambers* v. *Maroney*, 399 U.S. 42, 50, 90 S. Ct. 1975, 26 L. Ed. 2d 419, quoting from *Dyke* v. *Taylor Implement Mfg. Co.*, 391 U.S. 216, 221, 88 S. Ct. 1472, 20 L. Ed. 2d 538. *Carroll* v. *United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, "holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained." *Chambers* v. *Maroney*, supra, 51. *Chambers* extended the rule of *Carroll* to situations where probable cause to conduct a search exists and the car is seized and later searched at the police station. *Chambers* v. *Maroney*, supra, 52. Hence, in the present case, the search of the van was reasonable so long as Troopers Fredericksen and Christopoulos had probable cause to believe that the van contained evidence pertaining to a crime before they began their search. *Dyke* v. *Taylor Implement Mfg. Co.*, supra; *Carroll* v. *United States*, supra, 156, 161–62.

The officers did have probable cause to search the van. The record discloses that when Officer D'Arcy arrived at the motel, Burt informed him of the linens belonging to the motel which he saw in the back of the van, and gave him the registration number of the van. Within fifteen minutes thereafter, the van was seen on route 91 by Trooper Fredericksen. Those facts would be ample to warrant a man of reasonable caution to believe that the van contained articles which were stolen from the motel. The dispatch received by Trooper Fredericksen to stop the van in regard to a larceny involving bed linens in Windsor Locks was based upon the information acquired by Officer D'Arcy.

The fact that Fredericksen was not apprised of the underlying circumstances which gave rise to the probable cause to search is not controlling. The collective knowledge of an entire organization may be imputed to an individual officer when he is requested to stop and search a vehicle. *State* v. *Watson,* 165 Conn. 577, 586, 345 A.2d 532; see *Williams* v. *United States,* 308 F.2d 326, 327 (D.C. Cir.); *State* v. *Cobuzzi,* 161 Conn. 371, 377, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664; *State* v. *Wilson,* 153 Conn. 39, 42, 212 A.2d 75. The search, therefore, was reasonable.

The defendant next claims that the court erred in charging the jury with respect to circumstantial evidence which tended to show the defendant's guilt without mentioning circumstantial evidence tending to show his innocence. The court may, in its discretion, make reasonable comments on the evidence. See, e.g., *Marko* v. *Stop & Shop, Inc.,* 169 Conn. 550, 562, 364 A.2d 217; *State* v. *Cari,* 163 Conn. 174, 182, 303 A.2d 7. Its comments, however, should be fair, must not amount to a direction of a verdict and should present the case in proper focus. *State* v. *Wade,* 96 Conn. 238, 245–46, 113 A. 458. See *Anderson & McPadden, Inc.* v. *Tunucci,* 167 Conn. 584, 589–90, 356 A.2d 873. Here, the attacked portion of the charge was fair and reasonable. The court did not in any way suggest what particular inferences should be drawn from the evidence. The court simply recited some of the evidence from which inferences could be drawn. Moreover, in an earlier portion of the charge, the evidence presented by the defendant was accurately summarized. Throughout the charge, the jury's role as

the finders of fact was repeatedly emphasized. The court's comments have not been shown to have been unfair or misleading in any way.

Error is next addressed to the court's charge concerning the inferences that may be drawn from the possession of recently stolen property. The court charged in part as follows: "Now, the possession of property recently stolen, if unexplained and standing alone or without other facts pointing to a contrary conclusion, will justify the trier, meaning you, in drawing an inference that the possessor stole the property, and the inference may be sufficiently strong to warrant a conviction of a charge of theft. The key word is 'possession.' 'Possession' . . . ordinarily signifies an intentional control of a designated thing accompanied by a knowledge of its character. So, was either of the defendants in posession of property recently stolen? If you determine 'no' . . . then ignore everything else I have said in this regard. . . . It is important to note that the inference is one of fact and may, but need not, be drawn by the trier. The soundness of the inference to be drawn involves the probative value of the circumstantial evidence, and I have previously defined to you circumstantial evidence. The probative tendency and the force of such circumstantial evidence depends upon its nature and relation to the other evidence in the case. It may justify an inference of theft, larceny, depending on the other facts and circumstances. It is really a question of logic rather than a question of law. This is true even though, if there are no surrounding circumstances pointing otherwise, the circumstantial evidence tends to point to the commission of the crime of theft. . . . And, of course, the circumstantial evidence may be found by the trier, meaning your-

self, not to be strong enough to warrant a conviction." That charge was correct in law. See, e.g., *State* v. *Raffone,* 161 Conn. 117, 126, 285 A.2d 323; *State* v. *Palkimas,* 153 Conn. 555, 558, 219 A.2d 220. The defendant contends, however, that the charge should not have been given because the state failed to produce any evidence from which the jury could have reasonably concluded that he was in possession of the stolen property.

We do not agree. The jury may draw reasonable inferences from the facts proven or from facts which they have found as a result of other reasonably drawn inferences. *State* v. *Benton,* 161 Conn. 404, 410, 288 A.2d 411; *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193. There was the following direct testimony: Eleven television sets and eleven quilts had been stolen from the Howard Johnson's Motor Lodge in Windsor Locks; the stolen merchandise was seen in a white Volkswagen van in the parking lot of that motel at about 5 a.m. on August 16, 1974; the same van was stopped near the Hartford-Wethersfield town line less than twenty minutes later; the defendant was the operator of the van at that time, and the van still contained the stolen merchandise; the defendant gave the trooper a license with a fictitious name; he was then arrested and taken to the Windsor Locks police station where the police conducted a personal search; during the search, while the defendant was straightening his belt, an object dropped to the floor which the defendant appeared to attempt to hide with his feet; the object was a master key to the Howard Johnson's Motor Lodge from which the property found in the van was stolen. If the jury believed that testimony they could have reasonably inferred that, prior to his arrest, the defendant (1) exercised intentional

control over the stolen property, (2) knew of its character, and, therefore, (3) was in possession of it. See *State* v. *Harris,* 159 Conn. 521, 531, 271 A.2d 74, cert. denied, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630. The court's charge on the issue of possession was appropriate.

The defendant's final claim is that the evidence was insufficient to support the verdict and that his motion to set the verdict aside should therefore have been granted. In view of our foregoing discussion, there is no need for us to address ourselves at length to this claim. Since the jury could have disbelieved the defendant's version of the events of August 16, 1974, and could have concluded that the defendant was in possession of the recently stolen property, it follows that they could have reasonably concluded that he was guilty of larceny. See *State* v. *Raffone,* supra, and *State* v. *Palkimas,* supra.

There is no error.

In this opinion the other judges concurred.