STATE OF CONNECTICUT *v.* JONATHAN L. MILLER
(14634)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and KATZ, Js.

Argued June 2—decision released August 24, 1993

*Ronald T. Murphy,* special public defender, for the appellant-appellee (defendant).

*Leon F. Dalbec, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *Edward Narus,* assistant state's attorney, for the appellee-appellant (state).

PETERS, C. J. The principal issue in this appeal is whether the state constitution prohibits a warrantless automobile search supported by probable cause but conducted while the automobile is impounded at a police station. The defendant, Jonathan L. Miller, was charged with criminal possession of a weapon in violation of General Statutes § 53a-217.[1] The trial court,

---

[1] Initially, the state filed a long form amended information charging the defendant with robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48 (a). After a trial to a jury before the court, *Miano, J.,* the defendant was acquitted of those charges.

Subsequently, the state filed a substitute information charging the defendant with possession of a weapon by a felon in violation of General Statutes § 53a-217, as well as an additional charge of possession of a weapon in a motor vehicle in violation of General Statutes § 29-38, which was nolled.

General Statutes (Rev. to 1989) § 53a-217 provides in relevant part: "CRIMINAL USE OF PISTOL, REVOLVER OR ELECTRONIC DEFENSE WEAPON: CLASS D FELONY. (a) A person is guilty of criminal possession of a pistol, revolver or electronic defense weapon when he possesses a pistol, revolver or electronic defense weapon and has been convicted of a capital felony, a class A felony, a class B felony, except a conviction under section 53a-86, 53a-122 or 53a-196a, a class C felony, except a conviction under section 53a-87, 53a-152, 53a-153 or 53a-196b, or a felony under sections 53a-60 to 53a-60c, inclusive, 53a-72a, 53a-72b, 53a-95, 53a-103, 53a-103a, 53a-114, 53a-136 or 53a-216. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction.

"(b) Criminal possession of a pistol, revolver or electronic defense weapon is a class D felony, for which two years of the sentence imposed may not be suspended or reduced by the court."

*Damiani, J.,* rendered a judgment of conviction upon the defendant's plea of nolo contendere; see General Statutes § 54-94a;[2] which was conditional upon his right to appeal the denial by the trial court, *Miano, J.,* of his motion to suppress evidence obtained during his arrest and the search and seizure of his automobile. On the defendant's appeal, the Appellate Court reversed the trial court's judgment on the ground that the search of the defendant's automobile had violated article first, § 7,[3] of the Connecticut constitution. *State* v. *Miller,* 29 Conn. App. 207, 614 A.2d 1229 (1992). The Appellate Court rejected, however, the defendant's claim that he was entitled to suppression of evidence that had allegedly been obtained through unconstitutionally extraterritorial conduct by the West Hartford police in Hartford. We subsequently granted the defendant's and the state's petitions for certification to appeal from the judgment of the Appellate Court, and we now affirm.[4]

---

[2] General Statutes § 54-94a provides: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[4] We granted the defendant's petition for certification to appeal, limited to the following issue: "Does the Connecticut constitution, in specific, article tenth, § 1, article first, § 7, or article first, § 9, prohibit municipal police

The relevant facts are reported in the decision of the Appellate Court.[5] *State* v. *Miller,* supra, 209–11. On March 17, 1990, three men allegedly robbed a supermarket in West Hartford. Id., 209. Witnesses observed two of the three alleged robbers flee the scene in a light gray Chrysler automobile with Connecticut license plate identification 428GFK. Id., 209–10. Shortly thereafter, the witnesses reported this information to the West Hartford police, who discovered that the automobile was registered to the defendant, whose address is 41 Arlington Street in Hartford. Id., 210. Police officers from West Hartford and Hartford then went to Arlington Street to apprehend the defendant, but neither he nor his automobile was present at that location. Id.

Three West Hartford police officers, including detective Jay St. Jacques, remained at Arlington Street in unmarked police cars parked at both ends of the street. At the request of St. Jacques, all other police cars left the area. Id.

About forty minutes later, a light gray Chrysler drove down Arlington Street. St. Jacques followed the automobile until it stopped. When the driver, who was the defendant, exited the automobile, St. Jacques shone his high beam lights on him, drew a weapon and identified himself as a police officer. Id. As the defendant attempted to reenter the automobile and start it, addi-

from intentionally going into another municipality to perform investigations, stakeouts, *Terry* stops, and/or warrantless seizures?" *State* v. *Miller,* 224 Conn. 915, 617 A.2d 170 (1992).

We granted the state's petition for certification to appeal, limited to the following issue: "In the circumstances of this case, did the warrantless search of the defendant's car at the West Hartford police station violate article first, § 7, of the Connecticut constitution?" *State* v. *Miller,* 224 Conn. 914, 617 A.2d 170 (1992).

[5] These facts were adduced at the trial court's hearing on the defendant's motion to suppress, which was held before Judge Miano, during the defendant's trial on charges of robbery in the first degree and conspiracy to commit robbery in the first degree. See footnote 1.

tional West Hartford police officers arrived. They removed the defendant from the automobile and patted him down, but discovered no incriminating evidence. Id., 210–11. After the officers had handcuffed the defendant and placed him in the back seat of one of the West Hartford police cars, St. Jacques retrieved the keys to the Chrysler from the defendant's pocket. St. Jacques unlocked the defendant's automobile and searched the passenger compartment, but discovered no incriminating evidence. Id., 211.

The witnesses subsequently positively identified the defendant as one of the alleged robbers, and the police transported him to the West Hartford police station. The defendant's automobile was towed to the West Hartford police department garage, where the police secured it and conducted a warrantless search, which revealed a .357 Smith and Wesson revolver in the trunk. Id.

The state charged the defendant with criminal possession of a weapon, in violation of § 53a-217.[6] The defendant moved to suppress evidence, including the gun recovered from his automobile's trunk. In support of his motion, the defendant argued that the gun was the fruit of an illegal search and seizure of the automobile and of an illegal arrest. The trial court, *Miano, J.*, denied the motion. The trial court, *Damiani, J.*, subsequently rendered a judgment of conviction upon the defendant's conditional plea of nolo contendere.

Pursuant to § 54-94a, the defendant appealed from the judgment of conviction to the Appellate Court claiming that (1) the West Hartford police had acted outside their territorial jurisdiction by performing an

---

[6] See footnote 1.

investigation, stakeout, *Terry*[7] stop and warrantless seizure[8] of the defendant's automobile in Hartford, and (2) the warrantless search of the defendant's automobile at the West Hartford police garage was not justified by any exception to the warrant requirement and thereby violated the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution.[9] Although the Appellate Court rejected the defendant's first claim, it reversed the judgment of the trial court on the ground that article first, § 7, of the Connecticut constitution prohibits the warrantless search of an automobile that has been impounded at a police garage.

In this certified appeal, both the defendant and the state take issue with the decision of the Appellate Court. The defendant contends that article tenth, § 1, article first, § 7, and article first, § 9, of the Connecticut constitution prohibit municipal police from conducting an extraterritorial investigation, stakeout, *Terry* stop or warrantless seizure. The defendant asserts, therefore, that the Appellate Court improperly affirmed the trial court's denial of his motion to suppress on that ground. The state argues that the warrantless search of the defendant's automobile, while it was impounded at the West Hartford police station, was valid under article first, § 7, of the Connecticut constitution. The state contends, therefore, that the Appellate Court

---

[7] *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[8] For the purpose of this appeal, we adopt the parties' characterization of the conduct of the West Hartford police in Hartford as "investigation, stakeout, *Terry* stop and warrantless seizure."

[9] The defendant also claimed that the gun seized from the trunk of his automobile was the fruit of an illegal arrest and, therefore, that it should have been suppressed. The Appellate Court rejected this claim, holding that the gun was not a fruit of the defendant's detention on Arlington Street, regardless of whether that detention was a *Terry* stop or an arrest. *State* v. *Miller,* 29 Conn. App. 207, 216, 614 A.2d 1229 (1992).

improperly reversed the trial court's denial of the defendant's motion to suppress on that ground. We reject both of these claims.

## I

The defendant contends that the trial court should have suppressed the gun recovered by West Hartford police officers from his automobile because the officers acted in violation of article tenth, § 1, article first, § 7, and article first, § 9, when they conducted an investigation, stakeout, *Terry* stop and warrantless automobile seizure in Hartford. We disagree.

## A

At the outset, we note that we need not decide whether the *Terry* stop of the defendant was invalid pursuant to the cited constitutional provisions. Even if the stop were unconstitutional, no evidence flowed from it[10] and, therefore, the subsequent prosecution of the defendant was not tainted by it. See *State* v. *Miller,* supra, 216. Accordingly, any illegality in the stop would not require dismissal of the charges against the defendant or a reversal of his conviction. *State* v. *Fleming,* 198 Conn. 255, 262–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

## B

Because, however, the discovery by the West Hartford police of the gun that the defendant seeks to have suppressed flowed from the investigation, stakeout and warrantless seizure of his automobile in Hartford,[11] we

[10] The Appellate Court rejected the defendant's claim that the recovery of the gun by the West Hartford police flowed from their detention of the defendant in Hartford. *State* v. *Miller,* 29 Conn. App. 207, 216, 614 A.2d 1229 (1992); see also footnote 9. This issue is not before us.

[11] The parties do not dispute that the investigation and stakeout by the West Hartford police, as well as their warrantless seizure of the defendant's automobile, led to the recovery of the gun that the defendant seeks to have suppressed.

must address the validity of those activities. The defendant contends that the extraterritorial conduct of the West Hartford police violated three provisions of the state constitution. We will address these three arguments seriatim.

1

First, the defendant contends that the home rule provision of the state constitution, contained in article tenth, § 1, prohibits a municipality from exercising any authority that is not expressly permitted by statute. Specifically, the defendant asserts that, because the conduct of the West Hartford police in Hartford exceeded the legislature's delegation of municipal authority, that conduct also violated article tenth, § 1. The defendant relies on General Statutes §§ 7-148, 7-276, 7-277a, 7-281, 29-7, 29-169, 29-176 and 54-1f[12]

---

[12] General Statutes § 7-148 provides in relevant part: "SCOPE OF MUNIC-IPAL POWERS. . . .

"(c) POWERS. Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general statutes . . .

"(4) PUBLIC SERVICES. (A) Provide for police protection, regulate and prescribe the duties of the persons providing police protection with respect to criminal matters within the limits of the municipality and maintain and regulate a suitable place of detention within the limits of the municipality for the safekeeping of all persons arrested and awaiting trial and do all other things necessary or desirable for the policing of the municipality . . . ."

General Statutes § 7-276 provides in relevant part: "POWERS OF COM-MISSIONERS. . . . The members of [a town's] police department shall have all such authority with respect to the service of criminal process and the enforcement of the criminal laws as is vested by the general statutes in police officers and constables."

General Statutes § 7-277a provides in relevant part: "POLICE ASSISTANCE AGREEMENTS. (a) The chief executive officer of any town, city or borough or his designee may, whenever he determines it to be necessary in order to protect the safety or well-being of his municipality, request the chief executive officer of any other town, city or borough to furnish such police assistance as is necessary to meet such situation and the chief executive officer, or chief of police or board of police commissioners or other duly constituted authority with the approval of the chief executive officer of the

as reflecting the relevant legislative limitations on municipal police officers' authority to engage in extraterritorial police activity. The defendant does not claim, however, that the alleged statutory violations themselves necessitate suppression of the gun. Rather, he relies solely on the alleged constitutional violations to support his claim that the trial court improperly denied his motion to suppress. We are not persuaded.

"Municipalities, because they are creations of the state, have no inherent legislative authority." *Simons*

municipality receiving such request may, notwithstanding any other provision or requirement of state or local law, assign and make available for duty in such other municipality, under the direction and command of an officer designated for the purpose, such part of the police forces under his control as he deems consistent with the safety and well-being of his municipality. . . ."

General Statutes § 7-281 provides: "EXECUTION OF CRIMINAL PROCESS IN TOWNS, CITIES AND BOROUGHS. EXECUTION OF ARREST WARRANTS. Active members of any legally organized police force in a town, city or borough shall have the same authority to execute criminal process in their respective towns, cities or boroughs as constables have in their respective towns, and, in addition, any such member having a warrant of arrest arising out of an offense allegedly committed in the town, city or borough in which such police force is located may execute such warrant in any part of the state."

General Statutes § 29-7 provides in relevant part: "POWERS AND DUTIES OF FORCE. BARRACKS. . . . All state policemen shall have, in any part of the state, the same powers with respect to criminal matters and the enforcement of the law relating thereto as sheriffs, policemen or constables have in their respective jurisdictions. . . ."

General Statutes § 29-169 provides in relevant part: "COOPERATION WITH TASK FORCE BY GOVERNMENTAL UNITS. AGREEMENTS WITH OTHER STATES. COOPERATION WITH FEDERAL AUTHORITIES. REFERRAL OF EVIDENCE OF CRIME OR MISCONDUCT. (a) The state-wide organized crime investigative task force may duly request and may receive from every department, division, board, bureau, commission or other agency of the state, or of any political subdivision thereof, cooperation and assistance in the performance of its duties, including the temporary assignment of personnel to the state-wide organized crime investigative task force which might be necessary in order to carry out its duties and responsibilities."

General Statutes § 29-176 provides in relevant part: "STATE-WIDE NAR-COTICS TASK FORCE; FORMATION; AUTHORITY; STATE, FEDERAL AND LOCAL ASSISTANCE. (a) There shall be within the division of state police within

v. *Canty,* 195 Conn. 524, 529, 488 A.2d 1267 (1985). Rather, the legislative authority of municipalities derives solely from express legislative grants. Article tenth, § 1, of the Connecticut constitution embodies this rule: "The general assembly shall by general law delegate such legislative authority as from time to time it deems appropriate to towns, cities and boroughs relative to the powers, organization, and form of government of such political subdivisions." Thus, "the sole font of municipal authority is legislative delegation in the form of a general statute or a special act adopted prior to the effective date of article tenth." Id., 530; see *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980).

---

the department of public safety a state-wide narcotics task force for the effective cooperative enforcement of the laws of this state concerning the manufacture, distribution, sale and possession of narcotics and controlled substances.

"(b) The task force shall be authorized to conduct any investigation authorized by this section at any place within the state as may be deemed necessary.

"(c) The task force may request and may receive from any federal, state or local agency, cooperation and assistance in the performance of its duties, including the temporary assignment of personnel which may be necessary to carry out the performance of its functions. . . ."

General Statutes § 54-1f provides in relevant part: "ARREST WITHOUT WARRANT. PURSUIT OUTSIDE PRECINCTS. (a) . . . . Peace officers, as defined in subdivision (9) of section 53a-3, in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others, provided that no constable elected pursuant to the provisions of section 9-200 shall be considered a peace officer for the purposes of this subsection, unless the town in which such constable holds office provides, by ordinance, that constables shall be considered peace officers for the purposes of this subsection.

"(b) Members of . . . any local police department . . . shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony.

"(c) Members of any local police department . . . when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. . . ."

The home rule provision, however, limits only the legislative powers of municipalities. Although we may have broadly described the home rule provision in prior cases as limiting a municipality's general authority to conduct its affairs, home rule is a constraint only on municipalities' legislative powers. The language of article tenth, § 1, clarifies this limited scope: "The general assembly shall . . . delegate such *legislative* authority . . . ." (Emphasis added.) Moreover, the home rule provision's focus is evident from the dual purposes of that provision: "[1] to relieve the General Assembly of the burdensome task of handling and enacting special *legislation* of local municipal concern and [2] to enable a municipality to draft and adopt a home rule *charter or ordinance* which shall constitute the organic law of the city . . . ." (Emphasis added; internal quotation marks omitted.) *Shelton* v. *Commissioner of Environmental Protection,* 193 Conn. 506, 521, 479 A.2d 208 (1984). The home rule provision thus "prohibits the legislature from encroaching on the local authority to *regulate* matters of purely local concern." (Emphasis added.) Id.; see also *Carofano* v. *Bridgeport,* 196 Conn. 623, 630, 495 A.2d 1011 (1985). Accordingly, it is beyond dispute that the home rule provision, contained in article tenth, § 1, of the Connecticut constitution, limits a municipality's legislative powers, and has no application to the scope of a municipality's other powers. Because the West Hartford police were not exercising legislative authority, the defendant's home rule argument is unpersuasive.

The defendant contends, however, that even if the home rule provision by its terms concerns only the legislative authority of municipalities, we should invalidate the conduct of the West Hartford police in this case pursuant to the "penumbras" of article tenth, § 1. Specifically, the defendant claims that, because the conduct of the West Hartford police violated statutory constraints on municipal police officers' authority to

conduct extraterritorial investigatory activities, the "penumbras" of the home rule provision were violated. Lacking further explanation by the defendant of the nature of these alleged "penumbras," however, and in light of home rule's origin in the status of municipalities as statutory creations with no inherent legislative power, we reject the defendant's proposed extension of article tenth, § 1.

2

Second, the defendant argues that the West Hartford police, by conducting the investigation, stakeout and warrantless automobile seizure in Hartford, violated article first, § 7, which, inter alia, proscribes unreasonable seizures.[13] The defendant contends that, because the West Hartford police officers' conduct violated statutory constraints on their territorial authority, that conduct was per se unreasonable under article first, § 7. The state argues, to the contrary, that a seizure may be constitutionally reasonable even if it is not specifically authorized by statute. We agree with the state.

Although statutes may, in some circumstances, help to define the contours of constitutional rights; see *State* v. *Lamme,* 216 Conn. 172, 180–81, 579 A.2d 484 (1990); cf. *State* v. *Joyner,* 225 Conn. 450, 468, 625 A.2d 791 (1993); we are not persuaded that the prohibition in article first, § 7, of unreasonable seizures encompasses the legislature's territorial restrictions on police conduct. See, e.g., General Statutes §§ 7-148, 7-276, 7-277a, 7-281, 29-7, 29-169, 29-176 and 54-1f set out in footnote 12. Legislative enactments are expressions of this state's public policy and do not necessarily define the outer boundaries of constitutional protections. Indeed, the legislature has the power to prohibit, as a matter of policy, that which we have held to be constitutional.

---

[13] See footnote 3.

Compare *State* v. *DeFusco,* 224 Conn. 627, 620 A.2d 746 (1993) (holding that warrantless police searches of curbside garbage containers are permissible under article first, § 7), with 1993 House Bill No. 7237, § 2 (seeking to prohibit such searches; no action was taken on the House floor regarding this bill). The defendant has pointed to nothing in the text, purpose or legislative history of the relevant statutes, however, to indicate that the legislature intended to equate the prohibited conduct with that which is constitutionally unreasonable pursuant to article first, § 7, of the Connecticut constitution. Accordingly, we reject the defendant's argument. ,

### 3

Finally, the defendant argues that article first, § 9, which provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law," prohibits the extraterritorial investigation, stakeout, *Terry* stop and warrantless automobile seizure in which the West Hartford police engaged in Hartford. Because we need not resolve the validity of the West Hartford police officers' detention of the defendant; *State* v. *Fleming,* supra; this claim requires us to decide only whether the investigation, stakeout and warrantless automobile seizure violated article first, § 9. We conclude that they did not.

Although article first, § 9, constitutes "one of our state constitutional provisions guaranteeing due process of law"; *State* v. *Lamme,* supra, 177; our cases applying that provision have generally involved personal liberty. See, e.g., *State* v. *Oquendo,* 223 Conn. 635, 646–53, 613 A.2d 1300 (1992) (determining whether a seizure of the defendant had occurred); *State* v. *Lamme,* supra, 180 (validity of detention that is not based on probable cause); *State* v. *Carroll,* 131 Conn. 224, 227–29, 38 A.2d 798 (1944) (validity of warrantless

arrest). The defendant provides no argument that the prohibition in article first, § 9, of restraints on personal liberty, such as arrests, detentions and punishment, that are not "clearly warranted by law" also includes a prohibition on illegal investigations, stakeouts and warrantless automobile seizures. Indeed, the crux of the defendant's argument is that, because the West Hartford police officers' conduct violated statutory constraints on extraterritorial police activities, it *thereby* violated article first, § 9. Accordingly, we hold that the West Hartford police officers' investigation, stakeout and warrantless automobile seizure did not violate article first, § 9.

We thus conclude that the investigatory conduct in Hartford by the West Hartford police did not violate article tenth, § 1, article first, § 7, or article first, § 9, of the state constitution. The Appellate Court properly affirmed the trial court's refusal to suppress the gun on those grounds.

## II

The state contends that the West Hartford police officers' warrantless search of the defendant's automobile at the West Hartford police station was permissible under article first, § 7, of the Connecticut constitution and, therefore, that the Appellate Court improperly reversed the trial court's denial of the defendant's motion to suppress on that ground. The state's claim directly raises the question whether the United States Supreme Court's decision in *Chambers* v. *Maroney*, 399 U.S. 42, 51–52, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), which interpreted the fourth amendment to permit a warrantless automobile search supported by probable cause and conducted while the automobile was impounded at a police station, is valid as a matter of state constitutional law. We are persuaded that it is not valid.[14]

[14] Our analysis is limited to noninventory searches of automobiles that have been impounded at police stations. We note, however, that the Appel-

We begin our analysis of this state constitutional question of first impression with a summary of the origin of the automobile exception to the warrant requirement and the United States Supreme Court's subsequent expansion of that exception in *Chambers*. In *Carroll* v. *United States*, 267 U.S. 132, 153, 45 S. Ct. 280, 69 L. Ed. 543 (1925), the United States Supreme Court held that the fourth amendment is not violated by a roadside warrantless search of an automobile if the police have probable cause to search the automobile and if obtaining a warrant would be impracticable because of the possibility that the automobile will be moved out of the jurisdiction. The rule announced in *Carroll* has come to be called the automobile exception to the warrant requirement. Connecticut recognizes this exception as a matter of state constitutional law. See, e.g., *State* v. *Dukes*, 209 Conn. 98, 126, 547 A.2d 10 (1988).[15]

---

late Court remanded the case to the trial court for consideration of whether the gun would inevitably have been discovered in an inventory search. *State* v. *Miller*, 29 Conn. App. 207, 235–36, 614 A.2d 1229 (1992).

[15] Our decision in *State* v. *Delossantos*, 211 Conn. 258, 266, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989), stated the automobile exception to the article first, § 7 warrant requirement in broad terms: "[O]ur automobile exception permits a warrantless search of an automobile whenever the police have probable cause to do so." (Internal quotation marks omitted.) That case did not require, however, that we decide whether the automobile exception allows a warrantless search of an automobile that has been impounded at a police station. Accordingly, we decline to read our generally stated assertion in *Delossantos* as implicitly deciding the question presented here.

Moreover, we reject the state's suggestion that we decided this question in *State* v. *Schoenbneelt*, 171 Conn. 119, 368 A.2d 117 (1976). The defendant in that case challenged the warrantless search of his automobile, which had been impounded at a police station, under the federal and state constitutions. Id., 122–23. Our rejection of his claim rested entirely, however, on cases applying the fourth amendment, although we did not expressly disavow reliance on the Connecticut constitution.

By contrast, in cases in which we have rested our decisions on state constitutional grounds, we have fully analyzed the relevant state constitutional provision and have expressly stated that the Connecticut constitution forms

In *Chambers* v. *Maroney,* supra, the United States Supreme Court extended the automobile exception to validate a warrantless search of an automobile that had been impounded at a police station. In support of its decision, the court stated that "[f]or constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." Id., 52. The present case requires that we determine whether article first, § 7, permits this expansion of the automobile exception.

We note, as a preliminary matter, that we are not bound in our state constitutional inquiry by the United States Supreme Court's decision in *Chambers.* "[W]e may find greater protection of individual rights under our state constitution than that provided by the federal constitution. 'It is well established that federal constitutional . . . law establishes a minimum national standard for the exercise of individual rights and does not inhibit state governments from affording higher levels of protection for such rights. . . .' (Internal quotation marks omitted.) *State* v. *Oquendo,* [supra, 649]. Moreover, we have held that '[i]n the area of fundamental civil liberties—which includes all protections of the declaration of rights contained in article first of the Connecticut constitution—we sit as a court of last resort. . . . In such constitutional adjudication, our first referent is Connecticut law and the full panoply of rights Connecticut citizens have come to expect as

a basis of our decision. Compare *State* v. *DeFusco,* 224 Conn. 627, 631–39, 620 A.2d 746 (1993), with *State* v. *Campbell,* 224 Conn. 168, 181 n.10, 617 A.2d 889 (1992). Accordingly, we decline to read our silence in *Schoenbneelt* regarding the basis of our decision as an indication that the state constitutional question was resolved.

their due. Accordingly, decisions of the United States Supreme Court defining fundamental rights are persuasive authority to be afforded respectful consideration, but they are to be followed by Connecticut courts only when they provide no less individual protection than is guaranteed by Connecticut law.' . . . *State* v. *Marsala,* 216 Conn. 150, 160, 579 A.2d 58 (1990). Recognizing that our state constitution 'is an instrument of progress . . . is intended to stand for a great length of time and should not be interpreted too narrowly or too literally' . . . *State* v. *Oquendo,* supra, 649; we have concluded in several cases that the state constitution provides broader protection of individual rights than does the federal constitution. See, e.g., id., 652; *State* v. *Marsala,* supra, 171; *State* v. *Dukes,* [supra, 112], and cases cited therein." *State* v. *DeFusco,* supra, 632.

In our independent determination of whether to follow the *Chambers* rule as a matter of state constitutional law, several factors may be useful: "(1) the *textual approach;* see, e.g., *Stolberg* v. *Caldwell,* 175 Conn. 586, 597–98, 402 A.2d 763 (1978), appeal dismissed sub nom. *Stolberg* v. *Davidson,* 454 U.S. 958, 102 S. Ct. 496, 70 L. Ed. 2d 374 (1981) ('Unless there is some clear reason for not doing so, effect must be given to every part of and each word in the constitution.'); (2) *holdings and dicta of this court, and the Appellate Court;* see, e.g., *Doe* v. *Maher,* 40 Conn. Sup. 394, 448–49, 515 A.2d 134 (1986) (trial court used strict scrutiny to analyze sex discrimination claim based on the equal protection clause of the state constitution, relying, in part, on dicta from the Connecticut Supreme Court regarding what standard would be used once Connecticut's equal rights amendment was adopted); (3) *federal precedent;* see, e.g., *State* v. *Lamme,* [supra, 184] ("The adoption of federal constitutional precedents that appropriately illuminate open textured provisions in our own organic

document in no way compromises our obligation independently to construe the provisions of our state constitution.'); (4) *sister state decisions* or sibling approach; see, e.g., *State* v. *Gethers,* 197 Conn. 369, 386–87, 497 A.2d 408 (1985); *Cologne* v. *Westfarms Associates,* [192 Conn. 48, 58–59, 469 A.2d 1201 (1984)]; (5) the *historical approach,* including the historical constitutional setting and the debates of the framers; see, e.g., *State* v. *Lamme,* supra, 178–80; *Cologne* v. *Westfarms Associates,* supra, 60–62; *Palka* v. *Walker,* 124 Conn. 121, 126, 198 A. 265 (1938); and (6) *economic/sociological considerations.* See *State* v. *Barton,* [219 Conn. 529, 546, 594 A.2d 917 (1991)]; *State* v. *Dukes,* supra, 115; see generally *State* v. *Jewett,* 146 Vt. 221, 500 A.2d 233 (1985); M. Margulies, 'Connecticut's Free Speech Clauses: A Framework and an Agenda,' 65 Conn. B.J. 437 (1991) (an analytical framework for state constitutional analysis in the context of the free speech clauses); E. Peters, 'State Constitutional Law: Federalism in the Common Law Tradition,' 84 Mich. L. Rev. 583 (1986) (book review)." (Emphasis in original.) *State* v. *Geisler,* 222 Conn. 672, 685–86, 610 A.2d 1225 (1992).

Applying these analytical tools, we note that neither the text nor the history of article first, § 7, provides any reason to depart from the United States Supreme Court's interpretation of the federal constitution in this case.[16] As we have previously held, the text of article first, § 7, is similar to the text of the fourth amendment. See *State* v. *Marsala,* supra, 159. Additionally, the history of article first, § 7, does not illuminate the appropriate scope of the automobile exception because the modern nature and function of the automobile, on which that exception is predicated, were unknown in

---

[16] In urging affirmance of the Appellate Court's conclusion that the automobile search in this case violated article first, § 7, the defendant concedes that he does not rely on either the text or the history of that provision.

1818. Cf. id., 167 n.12 (fourth amendment and article first, § 7, were both enacted to prohibit general warrants and writs of assistance). We turn, therefore, to the other analytical tools suggested in *Geisler*.

This court's precedents involving the state constitution's warrant requirement express a strong policy in favor of warrants that supports the Appellate Court's conclusion that article first, § 7, provides broader protection than does the fourth amendment against warrantless searches of automobiles that have been impounded at police stations, even though probable cause exists. For example, in *State* v. *Diaz*, 226 Conn. 514, 544–47, 628 A.2d 567 (1993), we rejected the defendant's claim that article first, § 7, requires de novo review of the probable cause determination made by a judge issuing a warrant, in part because of our concern that such review would discourage the police from seeking warrants. Additionally, in *State* v. *Geisler*, supra, 695–96, we held that, despite the validity of the emergency exception to the state constitution's warrant requirement, the police must retreat from a house that they have entered pursuant to that exception as soon as the emergency ceases to exist. See also *State* v. *DeFusco*, supra, 642; *State* v. *Duntz*, 223 Conn. 207, 216, 613 A.2d 224 (1992); *State* v. *Barton*, supra, 552.

Our constitutional preference for warrants reflects a goal of protecting citizens from unjustified police intrusions by interposing a neutral decisionmaker between the police and the object of the proposed search. See *State* v. *Diaz*, supra; cf. *State* v. *Jackson*, 162 Conn. 440, 444, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972) (purpose of fourth amendment is to require neutral and detached magistrate to make probable cause determination). Accordingly, a search is invalid if the police, without a justification rooted in a valid exception to the warrant requirement, have relied upon only their

own probable cause evaluation, even if later found to be correct, before searching. We thus read the two clauses of article first, § 7, in conjunction—a warrantless search is per se unreasonable, justified only by limited exceptions—rather than in disjunction—a search is valid if it is reasonable, and the presence of a warrant is just one factor in the determination of reasonableness. Cf., e.g., *State* v. *Badgett,* 200 Conn. 412, 423, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986) (construing fourth amendment to bar warrantless searches as per se unreasonable); see generally *State* v. *Larocco,* 794 P.2d 460, 467–69 (Utah 1990) (extensive discussion of the consequences of reading the two clauses of the fourth amendment in conjunction and in disjunction); R. Bloom, "Warrant Requirement—The Burger Court Approach," 53 U. Colo. L. Rev. 691 (1982).

Our constitutional preference for warrants is overcome only in specific and limited circumstances. See, e.g., *State* v. *Geisler,* supra, 691 (recognizing emergency exception as matter of state constitutional law); *State* v. *Delossantos,* 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989) (recognizing exception for search incident to arrest as matter of state constitutional law); *State* v. *Dukes,* supra, 126 (recognizing automobile exception on the highway as a matter of state constitutional law). These recognized exceptions derive primarily from acknowledged interests in protecting the safety of the police and the public and in preserving evidence.

In this case, the state offers two principal justifications for expanding the automobile exception to permit a warrantless automobile search that is conducted after the automobile has been impounded at a police station. First, the state asserts that it may be necessary, under certain circumstances, to delay a warrantless automobile search until such time as the automobile

is located in a safe, convenient place. This proffered justification primarily expresses a concern for the safety of the police while they are at the scene of an automobile seizure. We are not persuaded.

The state's argument fails because it relies upon the fiction that the legitimate safety concern that may necessitate towing an automobile from the site of its seizure to the police station also provides justification for the warrantless search of that automobile at the station. We refused to accept a similar fiction in *State* v. *Geisler,* supra, 695–96, in which we held that the police must obtain a search warrant upon expiration of the emergency that initially justified the warrantless entry into a suspect's home. Moreover, in *State* v. *Badgett,* supra, 427, we refused to extend the fiction that the passenger compartment of an automobile is *always* within reach of the arrestee to circumstances in which the arrestee is no longer at the scene when the warrantless search is undertaken. These fictions are inconsistent with our constitutionally mandated preference for warrants. We therefore reject the state's suggestion that the risks that lead police to tow an automobile to the police station also justify a warrantless search of the automobile after it has been impounded.

Second, the state contends that a person's privacy interest in his or her automobile is invaded to the same extent whether a warrantless search of that automobile is conducted at the scene of its seizure or at the police station. The state argues, therefore, that a warrantless automobile search at the police station is constitutionally permissible whenever a warrantless on-the-scene search would be permissible. We disagree.

We tolerate the warrantless on-the-scene automobile search *only* because obtaining a warrant would be impracticable in light of the inherent mobility of automobiles and the latent exigency that that mobil-

ity creates.[17] See *Carroll* v. *United States,* supra, 153. The balance between law enforcement interests and individuals' privacy interests thus tips in favor of law enforcement in the context of an on-the-scene automobile search. If the impracticability of obtaining a warrant no longer exists, however, our state constitutional preference for warrants regains its dominant place in that balance, and a warrant is required.[18]

Our conclusion is supported by decisions of other courts that have limited the applicability of the automobile exception pursuant to their state constitutions. For example, in *State* v. *Kock,* 302 Or. 29, 33, 725 P.2d 1285 (1986), the Oregon Supreme Court held, pursuant to the Oregon constitution, that, although "[s]earches of automobiles that *have just been lawfully stopped by police* may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence . . . any search of an automobile that was parked, immobile and

[17] As we stated in *State* v. *Januszewski,* 182 Conn. 142, 155, 428 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), a fourth amendment case, the automobile exception to the federal constitution's warrant requirement does not rely solely on the "actual or threatened mobility of an automobile." Rather, the automobile's inherent mobility and the "continuing possibility of being moved" underlie the exception. Our state constitutional decision today departs from our statements in *Januszewski* regarding the fourth amendment, therefore, only to the extent that we refuse, as a matter of state constitutional law, to extend the automobile exception to validate searches of automobiles impounded at the police station if there is no "continuing possibility [that the automobile will be] moved." Id.

[18] We recognize that requiring the police to secure a warrant in order to search an impounded automobile at the police station may burden the owner because the automobile will necessarily be held while the police seek the warrant. This factor does not, however, alter our conclusion. First, we regard that incremental burden as justified by our constitutional preference for warrants. Second, in most cases the police may be able to minimize this burden by establishing appropriate policies regarding inventory searches of impounded automobiles.

unoccupied at the time the police first encountered it . . . must be authorized by a warrant . . . or, alternatively, the prosecutor must demonstrate that exigent circumstances other than the potential mobility of the automobile exist." (Emphasis added.) See also *State* v. *Larocco,* supra, 469–70 (warrantless automobile searches are permissible under the state constitution only if supported by probable cause and if necessary to protect the police or the public or to prevent the destruction of evidence).[19]

Finally, we note that our holding will require suppression of unconstitutionally obtained evidence only if the state fails to establish that the evidence would subsequently have been obtained pursuant to the inevitable discovery doctrine. See *State* v. *Badgett,* supra, 432–34. In this case, the Appellate Court has ordered the trial court to determine whether the inevitable discovery rule would justify the trial court's denial of the defendant's motion to suppress the gun, despite the unconstitutionality of the search in which the gun was recovered. *State* v. *Miller,* supra, 236.

In light of our demonstrated constitutional preference for warrants and our concomitant obligation narrowly to circumscribe exceptions to the state constitutional warrant requirement, we conclude that a warrantless automobile search supported by probable cause, but conducted after the automobile has been

[19] We recognize, however, that most states facing this issue have adopted the *Chambers* rule as a matter of state constitutional law. See, e.g., *State* v. *Redfearn,* 441 So. 2d 200, 202 (La. 1983); *Commonwealth* v. *Moses,* 408 Mass. 136, 145–46, 557 N.E.2d 14 (1990); *State* v. *Gallant,* 133 N.H. 138, 146–47, 574 A.2d 385 (1990); *People* v. *Blasich,* 73 N.Y.2d 673, 681, 541 N.E.2d 40, 543 N.Y.S.2d 40 (1989). We are not persuaded by these decisions, however, because they rely primarily on the proposition that any justification for conducting a warrantless on-the-scene automobile search is sufficient justification for a search conducted after the automobile has been towed to the police station. As previously discussed, we reject that proposition as incompatible with our constitutional preference for warrants.

impounded at the police station, violates article first, § 7, of the Connecticut constitution. Accordingly, the Appellate Court properly upheld the defendant's claim that the gun should have been suppressed on that ground.[20]

The judgment is affirmed.

In this opinion BORDEN, BERDON and KATZ, Js., concurred.

CALLAHAN, J., concurring in part and dissenting in part. I agree with part I of the majority opinion. As to part II, however, I believe that the majority is reaching to expand the scope of the state constitution when such an expansion has scant support and serves no useful purpose. The majority concedes that neither textually nor historically is there any justification for the application of the state warrant requirement to this set of facts. It, nonetheless, discovers that Connecticut citizens are entitled to greater protection from searches and seizures, when there is probable cause to believe that their motor vehicles are the repositories of weapons or contraband, than that provided by the federal constitution. The majority concludes, consequently, contrary to a long line of cases commencing with *Chambers* v. *Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), that the police in this instance were required by the state constitution to obtain a warrant to search the defendant's automobile, even though the search and resultant seizure of the holdup weapon, a .357 caliber revolver, would have been constitutional

---

[20] We decline the defendant's invitation to reject the automobile exception entirely and instead to create an exception that requires exigency to justify warrantless searches of vehicles and possessions. We have recognized the automobile exception as a matter of state constitutional law; see *State* v. *Dukes*, 209 Conn. 98, 126, 547 A.2d 10 (1988); and, in light of the particular circumstances of this case, see no reason to question those decisions.

without a warrant under federal law, which we have followed up until this point. See *State* v. *Johnson,* 183 Conn. 148, 153, 438 A.2d 851 (1981); *State* v. *Schoenbneelt,* 171 Conn. 119, 123, 368 A.2d 117 (1976).

The state constitution, like its federal counterpart, proscribes only unreasonable searches and seizures. *State* v. *Dukes,* 209 Conn. 98, 121, 547 A.2d 10 (1988). It seems to me that if it is reasonable, and a proper exception to the warrant requirement, for the police to search a motor vehicle on the street without a warrant if they have probable cause to do so, and the majority does not dispute that it is, then a search of that same vehicle with the same probable cause does not become unreasonable if the vehicle is moved to a location where the search can be conducted with greater care and safety. The majority opinion will force the police to conduct motor vehicle searches in dangerous places and before hostile crowds or risk having valuable evidence suppressed at trial, if they determine that it is imperative that they pursue their investigation with dispatch rather than wait for a warrant.

The police may be spared such dilemmas, however, because of the inventory exception to the warrant requirement which, at least for the moment, remains viable. That "well-defined exception to the warrant requirement"; (internal quotation marks omitted) *State* v. *Gasparro,* 194 Conn. 96, 107, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985); allows the police, if their department has an established inventory policy, to comb the interior of a motor vehicle in their possession in order to inventory the vehicle and its contents. Id., 108. The obvious justification is to guard the police and others against the possible presence of dangerous articles in the vehicle, and to protect against potential claims of theft, loss or damage. See *Illinois* v. *Lafayette,* 462 U.S. 640, 646, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983). An inventory may

be done as a reasonable exception to the warrant requirement, without a warrant and without probable cause to believe that the vehicle contains anything even remotely connected to a crime. The majority opinion may result in a dramatic rise in the number of such searches.

That last comment is made not to encourage subterfuge or disrespect for the law, but to point out the illogic of constitutionally allowing the police to conduct inventories at police headquarters without a warrant and without probable cause, but not allowing them constitutionally to search, without a warrant, a vehicle they have probable cause to believe contains weapons or evidence of criminal activity that is properly in their possession at that same police headquarters. I do not, incidentally, have a problem with the reasonableness of inventory searches. My point is that the majority opinion seems to create an irrational distinction between what constitutes a proper exception to the warrant requirement when the criteria for inventory searches and what the police did in this case are laid side by side. I think *Chambers* had it right, relocating a motor vehicle to be searched by the police, who have probable cause to conduct a search of the vehicle, to a more secure site does not convert a reasonable warrantless search into an unreasonable one. The majority opinion appears to be simply a flexing of state constitutional muscle for its own sake.

I respectfully dissent.