# STATE OF CONNECTICUT *v.* WILLIAM D. PIERCE
## (AC 19474)
## (AC 19663)

Mihalakos, Dranginis and Peters, Js.

Argued September 21, 2001—officially released January 22, 2002

*Richard Hustad Miller*, special public defender, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *Stephen Carney*, assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. In this consolidated appeal, the defendant, William D. Pierce, appeals from the judgments of the trial court, rendered after jury trials, convicting him in one case of burglary in the second degree in violation of General Statutes § 53a-102 and with being a persistent serious felony offender in violation of General Statutes § 53a-40 and, in the second case, of three counts of burglary in the second degree, larceny in the third degree in violation of General Statutes § 53a-124 (b), two counts of larceny in the sixth degree in violation of General Statutes § 53a-125b (a) and with being a persistent serious felony offender in violation of § 53a-40. On appeal, the defendant claims that (1) Norwich police officers violated his right to be free from unlawful seizures under the constitution of Connecticut, article first, § 9, when they detained him in the town of Montville and (2), in light of that illegal detention, the trial court improperly failed to suppress the defendant's confession and burglary tools found at the scene as "fruit of the poisonous tree." We affirm the judgments of the trial court.

The jury reasonably could have found the following facts relevant to our resolution of this appeal. The Norwich police department, relying on a tip from a citizen,

was conducting an investigation and surveillance of the defendant in connection with a rash of burglaries in Norwich. The citizen reported seeing a suspicious person behind a building where some residential burglaries recently occurred. The citizen reported a vehicle that the police traced to the defendant. A criminal record check indicated that the defendant had a criminal history of burglary.

During the surveillance, the police followed the defendant's vehicle into Montville, a neighboring town. There, the Norwich officers observed the defendant park in a residential neighborhood, exit the vehicle and begin walking through various nearby backyards. Meanwhile, the Norwich police officers contacted Troop E of the Connecticut state police and the Montville police department for assistance.

After about forty-five minutes of surveillance of the area where the defendant had parked, Robert Drozynski, a sergeant with the Norwich department, observed the defendant crouch behind a woodpile in one of the yards. When Drozynski approached, he noticed a crowbar, flashlight and a pair of gloves lying on the ground a few feet from the defendant. Drozynski, accompanied by another Norwich officer, Michael Blanchette, handcuffed the defendant and brought him to the side of the road. The Norwich officers called Leonard Bunnell, a sergeant with the Montville police department, to the defendant's location. Bunnell had been participating in the surveillance for approximately ten minutes from a post less than one minute away. Bunnell assumed control of the defendant's investigative detention and, upon information from the Norwich police regarding the defendant's actions and the burglary tools, arrested him for possession of burglary tools and brought him to the state police barracks in Montville. The Montville and Norwich police departments, acting in conjunction, conducted a further investigation in the area where the defendant was

detained and learned that one of the houses had been broken into.

Later, two Norwich detectives interviewed the defendant at the barracks and elicited a fourteen page confession in which the defendant admitted to a burglary in Montville in the area where he was detained and to thirty-one other burglaries in Norwich and Montville. In his confession, the defendant named specific addresses and items taken from those residences. The state subsequently charged the defendant in connection with the thirty-two burglaries and the state proceeded in two criminal trials. The defendant was found guilty of all charges and sentenced to serve twenty years in prison. The defendant appealed from both judgments, and this court consolidated the appeals.

The defendant argues that the court improperly failed to suppress his statements and the alleged burglary tools on the ground that his detention had been illegal. Specifically, he contends that the detention violates article first, § 9, of the Connecticut constitution because the Norwich police officers did not have authority to make an extraterritorial investigatory stop in Montville.[1] The state, while not conceding the illegality of the stop, argues in response that even if we assume that the Norwich police did not have authority to detain the defendant in Montville, the burglary tools and confession did not constitute "fruit of the poisonous tree," and, furthermore, to the extent that they were, the misconduct was not egregious, the taint was sufficiently attenuated and the evidence was properly admitted. We

---

[1] In his appellate brief, the defendant also argues that specific grants of police authority pursuant to the General Statutes do not permit police to conduct *Terry* stops outside their jurisdiction. See *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). At oral argument, however, the defendant stated that he was not relying on statutory provisions to establish that the detention was not legal. We, therefore, have only his constitutional claim before us.

agree with the state that, under the circumstances of this case, any illegality in the stop would not require dismissal of the charges against the defendant or a reversal of the judgments of conviction. We therefore need not reach the issue of the constitutionality of the defendant's detention. See *State* v. *Miller*, 227 Conn. 363, 370, 630 A.2d 1315 (1993), citing *State* v. *Fleming*, 198 Conn. 255, 262–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

The trial court made the following findings concerning the defendant's motion to suppress: (1) the Norwich police conducted an extraterritorial investigation and stake-out of the defendant based on their information and belief that the defendant was a suspect in a series of burglaries; (2) the Norwich police acted "with the knowledge, the consent, the cooperation, and the presence of the Montville police department, and Sergeant Bunnell specifically"; (3) the actions of the Norwich police were based on a reasonable suspicion that the defendant had committed a crime or was about to commit a crime,[2] and that suspicion was sufficient for the Norwich police to detain the defendant; and (4) the actual arrest of the defendant for possession of burglary tools was conducted by Bunnell.

We first set forth the standard of review for claims relating to a motion to suppress. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they

---

[2] The defendant does not dispute that the police had a "reasonable and articulable suspicion" to conduct a *Terry* stop. In fact, he conceded at oral argument that had he been detained in Norwich, the stop would have been valid.

find support in the facts set out in the memorandum of decision . . . . Additionally, we are mindful of our authority to affirm a judgment of a trial court on a dispositive alternate ground for which there is support in the trial court record." (Citation omitted; internal quotation marks omitted.) *State* v. *Buddhu*, 65 Conn. App. 104, 108, 782 A.2d 169 (2001).

"The purpose of the exclusionary rule is to penalize law enforcement officials by suppressing evidence obtained by illegal means in order to deter police conduct that tramples on the fourth amendment rights of citizens." *State* v. *Blackman*, 246 Conn. 547, 555, 716 A.2d 101 (1998). "Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. . . . All evidence is not, however, a fruit of the poisonous tree simply because it would not have been discovered but for the illegal action of law enforcement officials. . . . Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. . . . The initial determination is, therefore, whether the challenged evidence is in some sense the product of illegal government activity." (Citations omitted; internal quotation marks omitted.) *State* v. *Hammond*, 257 Conn. 610, 626–27, 778 A.2d 108 (2001).

The United States Supreme Court in *Brown* v. *Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975), explained that the factors to be considered in determining whether the taint has been dissipated include whether *Miranda*[3] warnings have been given, the temporal proximity of the illegal police action and the discovery of the challenged evidence, the presence

[3] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of intervening circumstances, and the purpose and flagrancy of the official misconduct. Id., 603–604; see also *State* v. *Ostroski*, 201 Conn. 534, 546–47, 518 A.2d 915 (1986).

The first question we must consider, therefore, is whether, in light of all of the circumstances, the defendant's incriminatory statements were obtained by the exploitation of the alleged illegality of the initial *Terry* stop of the defendant by the Norwich police. Although the defendant's confession was given within a few hours of his arrest, after applying the factors of *Brown* v. *Illinois*, supra, 422 U.S. 603–604, to the present case, we conclude that the defendant's confession was sufficiently attenuated from his arrest to be purged of any possible taint.

First, the record supports the finding that the defendant was advised of his *Miranda* rights on more than one occasion, that he knowingly waived those rights and that, because of his prior criminal history, he had a degree of understanding of criminal procedure. In fact, the defendant remarked that he would plead nolo contendere in order to avoid trial. Second, and perhaps more significantly, the Norwich police officers' conduct did not rise to the level of flagrant and purposeful misconduct that would render the defendant's confession inadmissible. The Norwich officers properly identified the defendant as a suspect and began a legitimate investigation and surveillance of the defendant. When the defendant entered Montville, the Norwich police followed and contacted Montville police for assistance. Because there were only three officers on duty at that time, the Montville police department sent Bunnell to assist the Norwich officers. Thereafter, Norwich officers stopped the defendant based on a reasonable and articulable suspicion that he had just committed a crime or was in the course of committing a crime. They then immediately handed the defendant over to Bunnell, who

arrested the defendant. Under these circumstances, we cannot say that the conduct of the police was flagrant misconduct. Accordingly, we conclude that the defendant's confession was properly admitted.

With respect to the burglary tools, the defendant argues that the Norwich police detained him illegally, and, therefore, the burglary tools, obtained as a result of the illegal detention, should have been suppressed. He argues that, if we accept the illegality of his detention, the burglary tools were obtained by the exploitation of the initial illegality and cannot be purged of the taint. In response, the state argues that even if the detention was illegal, the burglary tools were not a product of the initial detention because they were in plain view. We agree with the state.

"It is a basic principle of constitutional law that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions. . . . One such exception is the plain view doctrine." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Wright*, 58 Conn. App. 136, 146, 752 A.2d 1147, cert. denied, 254 Conn. 907, 755 A.2d 884 (2000).

Our Supreme Court recently stated in *State* v. *Eady*, 249 Conn. 431, 437, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999), that warrantless seizures of contraband in plain view are reasonable under the fourth amendment if " '(1) the initial intrusion that enabled the police to view the items seized [was] lawful; and (2) the police . . . had probable cause to believe that these items were contraband or stolen goods.' " See also *State* v. *Nieves*, 65 Conn. App. 212, 217, 782 A.2d 203 (2001). "[I]f contraband is left in open view and is observed by a police officer

from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no search within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 287 n.35, 764 A.2d 1251 (2001).

In this case, it is undisputed that the police saw the burglary tools on the ground a few feet from the defendant where the police were conducting a proper surveillance[4] of him.[5] The defendant argues that the only reason the police saw the tools was because of his detention. We disagree. The detention did not produce the evidence. Rather, his detention was separate and apart from the seizure of the tools. See *State* v. *Colvin*, 241 Conn. 650, 658, 697 A.2d 1122 (1997) (discovery of cocaine in defendant's vehicle had no connection to illegal detention where defendant's actions during detention did not cause officer to look into his vehicle). This is not a situation where the tools were found on the defendant's person during the detention, thereby implicating his privacy interests. We therefore conclude that the burglary tools were not the "fruit" of the allegedly illegal detention.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[4] The defendant does not assert that the Norwich police were acting outside their authority in conducting a surveillance of the defendant in Montville. See *State* v. *Miller*, supra, 227 Conn. 377 (extraterritorial stakeout and investigation not violative of article first, § 9, of constitution of Connecticut).

[5] The trial court did not address the plain view exception because it found that the initial detention was legal. We may still review this claim, however, because its factual basis is undisputed. See *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 794, 749 A.2d 1144 (2000) (court may affirm judgment on appeal on dispositive alternate ground where there is support in record). A determination of whether the discovery of the tools was before, after or contemporaneous with the defendant's detention is not necessary for us to determine whether they are the product of the detention. See *State* v. *Colvin*, 241 Conn. 650, 659, 697 A.2d 1122 (1997).