[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
 I. FACTUAL AND PROCEDURAL BACKGROUND
The defendant moves to suppress the results of the chemical analysis of his blood and urine taken at Hartford Hospital for the purpose of diagnosis and treatment of injuries sustained by the defendant on April 1, 2000 following a one car motor vehicle accident. On May 12, 2000, State Troopers John Meyer and Norman Waterbury applied for and obtained a search warrant for the results of the test blood sample drawn from the defendant. The warrant was executed on that date. Hartford Hospital complied with the warrant by producing documents which contained the results of the chemical analysis of the defendant's blood as well as his urine. A warrant for the defendant's arrest was obtained on July 10, 2000. The application for the arrest warrant included the information obtained from Hartford Hospital. The defendant turned himself into the state police and was arrested on July 23, 2000. CT Page 3931
The defendant filed the present motion to suppress on December 11, 2001. The state filed its memorandum of law in opposition to the defendant's motion to [suppress] on February 7, 2002, and its supplemental brief on March 5, 2002. A hearing was scheduled for March 6, 2002. However, both parties agreed on that date to forego an evidentiary hearing and have this matter taken on the papers.
 II. DISCUSSION
The defendant argues that, with respect to the blood test, "the warrant application is insufficient on its face in that it merely states two out of the three required conditions for issuance of a warrant and fails to state that such sample was taken in accordance with the provisions set out in the enabling statute, [General Statutes] § 14-227a, to wit, that the analysis was performed in accordance with the regulations promulgated under [General Statutes] § 14-227[a] (e)." Defendant's Motion to Suppress, p. 3. He further alleges that "[i]n this case absent the inclusion of the allegation that such tests were conducted in accordance with the procedures established pursuant to the statute all [sic] as set out in [General Statutes] § 14-227a (1) the court was without sufficient grounds to issue the warrant and if issued there was no report to seize and the results of the seizure should therefore be suppressed." Id. 5.
The defendant's interpretation of General Statutes § 14-227a (1) is incorrect. Subsection (1)(1) through (4) set out the requirements "to establish probable cause for the arrest by warrant of [the injured motor vehicle operator] for a violation of subsection (a) of this section" and for the admissibility and competence of the evidence in any subsequent proceeding. (Emphasis added.) General Statutes § 14-227a (1). Subdivision (2) requires that "if a blood sample was taken, the blood sample was taken in accordance with the regulations adopted under subsection (e) of this section." This is not a requirement for issuance of the search warrant, but rather, is a requirement for probable cause for arrest and for admissibility. Subdivision (4) requires that "[a] judge has issued a search warrant in accordance with section 54-33a
authorizing the seizure of the chemical analysis of such blood or urine sample." Pursuant to the plain language of the statute, the requirements for the issuance of a search warrant for the hospital test results of a motor vehicle operator's blood or urine are found in General Statutes § 54-33a, not § 14-227a (1). Therefore, the search warrant authorizing the seizure of the defendant's blood is not invalid for reason of the state police's failure to reference General Statutes §14-227a (e) in the application.
The defendant also argues that "[w]ith respect to the report of the CT Page 3932 results of the chemical analysis of urine, the property seized is not that described in the warrant." Defendant's Motion to Suppress, p. 1. The application sought and the warrant granted the seizure of:
 a document/report or copy there of, setting forth the results of the analysis of the test blood sample drawn from Vern Beckwith (DOB:09-24-63). Said sample having been drawn on 04-01-00 by a medical official in the normal course of the treatment/business at Hartford Hospital.
The warrant did not authorize the seizure of the urine test performed at Hartford Hospital. Therefore, the defendant alleges that this evidence which was seized must be suppressed.
"The fourth amendment to the federal constitution requires that search warrants describe with particularity the place to be searched and the persons or things to be seized. . . . This requirement makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another." (Citations omitted; internal quotation marks omitted.) State v. Montgomery, 254 Conn. 694, 703-04, 759 A.2d 995
(2000). However, "when the items that were seized were discovered during a lawful search authorized by a valid warrant [and when] they were discovered, it was immediately apparent to the officer that they constituted incriminating evidence . . . the seizure [is] authorized by the plain-view doctrine. . . . The police meet the immediately apparent requirement if, [up]on discovery, they have probable cause to associate the property in plain view with criminal activity without further investigation. . . . In other words, objects not named in the warrant, but found within an officer's plain view, may be seized if the . . . officers had a reasonable basis for believing that the seized evidence was reasonably related to the offense which formed the basis for the search warrant. . . . This doctrine is based upon the premise that the police need not ignore incriminating evidence in plain view while they are operating within the parameters of a valid search warrant or are otherwise entitled to be in a position to view the items seized." (Citations omitted; internal quotation marks omitted.) Id. 706-07.
As stated previously, the state police were acting pursuant to a valid warrant authorizing the seizure of the analysis of the defendant's blood. Hartford Hospital complied with the warrant and turned over to the state police the medical records of the defendant which contained laboratory test results of the defendant's blood. These records also contained the laboratory results of the defendant's urine. According to these records, an analysis of the defendant's urine indicated the presence of cocaine. This information was printed on the same pieces of CT Page 3933 paper as the blood test analysis. The police were not required to turn a blind eye to this obviously incriminating evidence which was reasonably related to the offense which formed the basis for the search warrant, operating a motor vehicle under the influence of alcohol/drugs or both. The police were operating within the parameters of a valid search warrant and the information regarding the analysis of the defendant's urine was clearly within their plain view.
Application of the exclusionary rule would be inappropriate in the present case. "The purpose of the exclusionary rule is to penalize law enforcement officials by suppressing evidence obtained by illegal means in order to deter police conduct that tramples on the fourth amendment rights of citizens. . . . Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality." (Citation omitted; internal quotation marks omitted.) State v. Pierce,67 Conn. App. 634, 639, 789 A.2d 496 (2002). The evidence of the urine test was not obtained as a result of illegal police conduct and therefore, the deterrent purpose of the rule would not be served.
Even assuming the warrant to be invalid, this disputed evidence would be admissible pursuant to the doctrine of inevitable discovery. "[I]f the [state] can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings." (Internal quotation marks omitted.) State v. Anderson, 67 Conn. App. 436, 443,787 A.2d 601 (2001). "[T]he interest of society in deterring unlawful police conduct and the public interest in having [fact finders] receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." (Emphasis omitted; internal quotation marks omitted.) Id. "[C]ircumstances justifying application of the inevitable discovery rule are most likely to be present . . . where the circumstances are such that, pursuant to some standardized procedures or established routine a certain evidence-revealing event would definitely have occurred later." (Emphasis omitted; internal quotation marks omitted.) Id. 445.
Assuming, without deciding, that the police overreached in obtaining the evidence of the urine test analysis, the Court concludes that this evidence inevitably would have been discovered at a later date. The state represents that:
 In the prosecution of any accident case involving injuries, both the state and defendant would have subpoenaed the entire medical record and permissibly CT Page 3934 or inevitably discovered the urine test results. Further, it is common and appropriate for the state to subpoena the entire medical record to determine whether to proceed under the per-se-section, or the common law section, or both, of the D.W.I. statute. Another common reason for subpoenaing entire medical records both on the part of the State and defense is to discover whether there is any exculpatory material. Under our discovery rules, the State is required to turn over any such material.
(Emphasis in original.) State's Supplemental Brief to Memorandum of Law in Opposition [to] Motion to Suppress, p. 5. The state has demonstrated that the evidence would have been obtained inevitably and therefore, would be admissible regardless of any overreaching by the police.
 III. CONCLUSION
Based upon the foregoing analysis, the defendant's motion to suppress is denied.
Dated at New Britain, Connecticut this twenty first day of March, 2002.
BY THE COURT,
Owens, J.