STATE OF CONNECTICUT *v.* ANDRZEJ CZYZEWSKI
(AC 20978)

Mihalakos, Dranginis and Dupont, Js.

Argued December 10, 2001—officially released June 4, 2002

in the slightest degree against the defendant, nor should it enter into your discussions or deliberations."

*Jon L. Schoenhorn,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Vernon D. Oliver,* assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Andrzej Czyzewski, appeals from the judgment of conviction, rendered after his conditional plea of nolo contendere, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a, failure to obey a stop sign in violation of General Statutes § 14-301, failure to drive in the proper lane in violation of General Statutes § 14-236 and failure to take a sobriety test in violation of General Statutes § 14-227b. The sole issue on appeal is whether the defendant's motion to suppress evidence, which was based on federal and state constitutional grounds and a violation of General Statutes § 54-1f, should have been granted.[1]

---

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to

The facts that follow were stipulated to by the parties and are found in the police report written by Officer Richard Riccardo of the Berlin police department. On July 25, 1999, at approximately 3:30 a.m., Newington police Sergeant Michael Tkac was on duty and in a marked Newington police cruiser at a stop sign in the town of Berlin. Tkac observed a vehicle, which was going eastbound, proceed through the intersection without stopping. The driver of the vehicle was later identified as the defendant. The defendant lost control of the vehicle, spun 180 degrees and narrowly missed Tkac's police cruiser. The defendant then proceeded southbound with Tkac following him. Tkac observed the defendant cross the double yellow line on two occasions and enter the northbound lane of traffic. The defendant also struck the roadside shoulder of the northbound lane. Tkac initiated a motor vehicle stop by activating his overhead lights. The defendant stopped his vehicle on the right side of the road. Tkac approached the vehicle and detected a strong odor of alcohol emanating from the vehicle. Tkac requested the defendant's license, registration and insurance information. The defendant had difficulty in handling the documents and fumbled while retrieving them. Tkac then requested assistance from the Berlin police department.

The Berlin police department dispatched Riccardo to the scene. Tkac gave all of his observations regarding the incident to Riccardo. Riccardo approached the vehicle and detected a strong odor of alcohol emanating from the vehicle. Riccardo asked the defendant if he had been drinking alcohol, and the defendant responded that he had consumed one beer. At that

be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

point, Riccardo detected a strong odor of alcohol on the defendant's breath and person. Riccardo observed that the defendant's eyes were bloodshot and glassy. Riccardo asked the defendant to exit the vehicle, and the defendant complied. The defendant had to brace himself against the driver's door as he exited the vehicle. The defendant's appearance was "disheveled" and he had difficulty maintaining his balance. Riccardo then asked the defendant to perform various sobriety tests, and the defendant complied. The defendant failed those tests and was placed under arrest by the Berlin officer. Following his arrest, the defendant refused to sign a statement acknowledging that he understood his rights and attempted to contact an attorney. The defendant then refused to submit to a breath test.

After the defendant's plea of nolo contendere, the court sentenced the defendant to six months imprisonment, execution suspended, with eighteen months probation. The court also imposed a $500 fine and 100 hours of community service for operating a motor vehicle while under the influence of liquor. The court remitted fines totaling $135 for the two infractions and the violation.[2]

The defendant asserts that the traffic stop by a municipal police officer outside his territorial jurisdiction was a violation of statutory authority and, therefore, violated his rights under the state constitution. The defendant claims that the evidence gathered against him as a result of the illegal stop should have been suppressed because the municipal police officer had no authority to perform an investigative stop, or a search and seizure outside of his municipality. Specifically, the defendant claims that the extraterritorial conduct of the police officer

---

[2] In a footnote contained in the defendant's brief, he claims that refusal to submit to a breath test is not a violation for which the defendant can be charged and fined. This issue is not necessary to our disposition of this appeal, and we do not address its merits.

was a violation of his rights under article first, §§ 7[3] and 9,[4] of the Connecticut constitution and General Statutes § 54-1f. We do not agree.

The standard of review for a trial court's ruling on a motion to suppress is well settled. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Pierce*, 67 Conn. App. 634, 638–39, 789 A.2d 496, cert. denied, 260 Conn. 904, 795 A.2d 546 (2002). The parties stipulated to the facts. Therefore, "our review is plenary and we must determine whether the trial court's conclusions of law are legally and logically correct and find support in the stipulated facts." (Internal quotation marks omitted.) *Doucette* v. *Pomes*, 247 Conn. 442, 453, 724 A.2d 481 (1999).

The defendant claims that the Newington police officer's actions exceeded his authority because they were a violation of the statutory authority conferred to municipal police officers under § 54-1f.[5] According to

[3] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[4] Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[5] General Statutes § 54-1f is entitled "Arrest without warrant. Pursuit outside precincts" and provides in relevant part: "(a) . . . Peace officers, as defined in subdivision (9) of section 53a-3 [subdivision (9) includes local police officers], in their respective precincts, shall arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others . . . .

"(b) Members of the Division of State Police within the Department of

§ 54-1f (a), municipal police officers may make a warrantless arrest for *any* offense within their own jurisdiction. Section 54-1f (b) allows a municipal officer to arrest a person without a warrant in any jurisdiction if there are reasonable grounds to believe a felony was committed or is being committed.[6] Section 54-1f (c) additionally allows municipal officers to arrest a suspect without a warrant in another jurisdiction for any offense after immediately pursuing the suspect from their own jurisdiction into any other part of the state. The parties have stipulated to facts that do not apply to the situation of § 54-1f (b) or to the exception for an extraterritorial arrest under § 54-1f (c). The question is whether § 54-1f (a) applies to the facts.

The state argues that § 54-1f (a) did not prevent the arrest by the Berlin police officer, although it would prevent an arrest by the Newington police officer. The state relies on the facts that the Newington police officer did not make the arrest and that the Berlin police

Public Safety or of any local police department or any chief inspector or inspector in the Division of Criminal Justice shall arrest, without previous complaint and warrant, any person who the officer has reasonable grounds to believe has committed or is committing a felony.

"(c) Members of any local police department or the Office of State Capitol Police . . . who are certified under the provisions of sections 7-294a to 7-294e, inclusive, and who perform criminal law enforcement duties, when in immediate pursuit of one who may be arrested under the provisions of this section, are authorized to pursue the offender outside of their respective precincts into any part of the state in order to effect the arrest. Such person may then be returned in the custody of such officer to the precinct in which the offense was committed. . . ."

[6] In light of our decision, we do not need to determine whether the statute would grant municipal police officers the authority to arrest a suspect whom the officer has a reasonable suspicion *may* be about to commit a felony, such as misconduct with a motor vehicle in violation of General Statutes § 53a-57 or manslaughter in the second degree with a motor vehicle in violation of General Statutes § 53a-56b. In addition, there is nothing in the record of this case to indicate whether the Newington police officer believed that a felony was about to be committed by the defendant, and, therefore, we do not need to determine whether that belief would have been reasonable or is included in the statutory language.

officer, within the town of Berlin, made the arrest. The state argues that the Newington police officer made an extraterritorial investigative stop or a *Terry* stop,[7] rather than an arrest. See, e.g., *State* v. *Kowal*, 31 Conn. App. 669, 672–73, 626 A.2d 822, cert. denied, 227 Conn. 923, 632 A.2d 702 (1993). On the basis of prior Connecticut cases and our interpretation of § 54-1f, we agree with the state.

Our Supreme Court has stated that a defendant suspected of operating a motor vehicle while under the influence of intoxicating liquor can be detained briefly without a violation of the defendant's due process rights. *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990). Our courts have clearly distinguished between an investigatory stop and an arrest. See *Terry* v. *Ohio*, 392 U.S. 1, 22–27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Lamme*, supra, 184; see also *State* v. *Oquendo*, 223 Conn. 635, 656, 613 A.2d 1300 (1992). Our Supreme Court has acknowledged that "the police must enjoy a certain degree of latitude in making investigative stops. Nevertheless, the requirement of a reasonable and articulable factual basis for an investigative stop must be met." *State* v. *Oquendo*, supra, 656.

The question becomes whether the term "arrest" in § 54-1f (a) means a full custodial arrest or is intended to limit municipal police officers from performing investigatory stops outside their jurisdiction. Section 54-1f has been amended several times since our courts have discussed the distinction between investigatory stops and arrests. The legislature has chosen not to alter the

[7] Under *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), an officer may forcibly stop a suspect and engage in a "stop and frisk" investigation if the officer has a reasonable and articulable suspicion that the suspect has committed or is about to commit a crime. "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Id., 22.

statute to reflect this distinction drawn by the courts. "Courts cannot, by the process of construction, abrogate a clear expression of legislative intent, especially when, as here, unambiguous language is fortified by the refusal of the legislature, in the light of judicial interpretation, to change it." *Buxton* v. *Ullman*, 147 Conn. 48, 57, 156 A.2d 508 (1959), appeal dismissed sub nom. *Poe* v. *Ullman*, 367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961); see also *State* v. *Guckian*, 27 Conn. App. 225, 234–35, 605 A.2d 874 (1992), aff'd, 226 Conn. 191, 627 A.2d 407 (1993).

We must read § 54-1f in its entirety to decide if the defendant's interpretation of the term arrest to include a *Terry* stop is reasonable. Section 54-1f (d) provides: "Any person arrested pursuant to this section shall be presented with reasonable promptness before proper authority." Persons who have been the subject of a *Terry* stop have not yet been arrested and might not be arrested at all and, therefore, are not required to appear before any authority. The Newington officer in this case did not effect the arrest. Rather, it was the Berlin officer, who, after reviewing the facts himself and making his own appraisal of the situation, as well as giving the defendant field sobriety tests, effected the arrest. It is the Berlin authority before which the defendant must be presented. The Berlin police officer made an arrest on the facts he personally observed as to the defendant's operation of the motor vehicle while under the influence of intoxicating liquor. He made an arrest as to the two infractions within his own municipality on the "speedy information of others" as provided in § 54-1f (a).[8]

Even if the statute were interpreted to prohibit the type of investigatory stop conducted by the Newington officer in the present case, the defendant cannot prevail.

---

[8] See footnote 5.

Our Supreme Court has upheld the argument that "a seizure may be constitutionally reasonable even if it is not specifically authorized by statute." *State* v. *Miller*, 227 Conn. 363, 375, 630 A.2d 1315 (1993). In *Miller*, the defendant was arrested for robbery and conspiracy to commit robbery in Hartford by three West Hartford police officers. Following the defendant's arrest, the West Hartford police officers impounded the defendant's car and took it to their police department garage. The police conducted a warrantless search and discovered a gun suspected of being used in the crimes for which the defendant was charged. The defendant appealed from the judgment of conviction and claimed that the West Hartford police officers had acted outside their jurisdiction and had performed an investigation, stakeout, *Terry* stop and warrantless seizure of the defendant's automobile. Id., 368–69. The defendant claimed that the extraterritorial police action violated article tenth, § 1, article first, § 7, and article first, § 9, of the Connecticut constitution.

In *Miller*, our Supreme Court stated that it need not determine whether the *Terry* stop was invalid because "no evidence flowed from it and, therefore, the subsequent prosecution of the defendant was not tainted by [the *Terry* stop]. . . . Accordingly, any illegality in the stop would not require dismissal of the charges against the defendant or a reversal of his conviction." (Citation omitted.) Id., 370, citing *State* v. *Fleming*, 198 Conn. 255, 262–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

"Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. . . . All evidence is not, however, a fruit of the poisonous tree simply because it would not have been discovered but for the illegal action of law enforcement officials. . . . Rather, the more apt question in such a case is whether, granting establishment of the

primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. . . . The initial determination is, therefore, whether the challenged evidence is in some sense the product of illegal government activity." (Citations omitted; internal quotation marks omitted.) *State* v. *Colvin*, 241 Conn. 650, 656–57, 697 A.2d 1122 (1997).

In this case, the Newington police officer did not investigate beyond requesting the defendant's license, registration and insurance information, and he then turned over the investigation to the correct municipal officers. The officer in the proper jurisdiction conducted the sobriety tests. The subsequent investigation by the officer from the correct jurisdiction was sufficiently removed from any taint that the initial investigatory stop may have had.

The only charges that stemmed from the Newington police officer's observations were the minor infractions for which the trial court remitted the fines. These charges were based on the "speedy information" of the Newington police officer as given to the Berlin police officer who made the arrest.[9]

Police officers arrest and charge suspects frequently based on hearsay evidence of victims and witnesses. See, e.g., *Pizzo* v. *Commissioner of Motor Vehicles*, 62 Conn. App. 571, 578–79, 771 A.2d 273 (2001). The Newington police officer would be able to testify at a trial as to his observations, as would any ordinary citizen.[10]

---

[9] The defendant has made no argument based on the distinction between the offenses for which the Berlin police officer had independent knowledge and the traffic violations for which he did not.

[10] As a practical matter, it is unlikely that a police officer would issue a citation to a driver for failure to stop at a stop sign or failure to stay in the proper lane based solely on an eyewitness if, after an investigation, there was no probable cause to make an arrest for operating a motor vehicle while under the influence.

The *Miller* court differentiated between the *Terry* stop and the investigation, stakeout and warrantless search of the automobile.[11] *State* v. *Miller*, supra, 227 Conn. 370–71. The *Miller* court analyzed whether the extraterritorial conduct violated article first, § 7, of the Connecticut constitution, which prohibits unreasonable seizures and searches. "[W]e are not persuaded that the prohibition in article first, § 7, of unreasonable seizures encompasses the legislature's territorial restrictions on police conduct. . . . Legislative enactments are expressions of this state's public policy and do not necessarily define the outer boundaries of constitutional protections. Indeed, the legislature has the power to prohibit, as a matter of policy, that which we have held to be constitutional." (Citations omitted.) Id., 375.

The *Miller* court also analyzed whether the extraterritorial conduct of the police officers violated article first, § 9, of the Connecticut constitution. "Although article first, § 9, constitutes one of our state constitutional provisions guaranteeing due process of law . . . our cases applying that provision have generally involved personal liberty. . . . The defendant provides no argument that the prohibition in article first, § 9, of restraints on personal liberty, such as arrests, detentions and punishment, that are not clearly warranted by law also includes a prohibition on illegal investigations, stakeouts and warrantless automobile seizures. Indeed, the crux of the defendant's argument is that, because the [extraterritorial] police officers' conduct violated statutory constraints on extraterritorial police activities, it *thereby* violated article first, § 9. Accordingly, we hold that the [extraterritorial] police officers' investigation,

---

[11] The *Miller* court found that the warrantless search of the defendant's automobile did violate article first, § 7, of the Connecticut constitution. *State* v. *Miller*, supra, 227 Conn. 377. That issue is irrelevant to the present case because no evidence was obtained from the defendant's vehicle.

stakeout and warrantless automobile seizure did not violate article first, § 9." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 376–77.

Although the *Miller* court did not determine whether the detention of the defendant, i.e., the *Terry* stop, was valid, it did determine that the extraterritorial officers' investigation did not violate the provisions of the Connecticut constitution. Id., 370–77. We further note that the decision in *Miller* is consistent with other decisions by Connecticut courts that have found that an officer's extraterritorial conduct did not violate the provisions of the United States constitution and the Connecticut constitution. See, e.g., *State* v. *Kuskowski*, 200 Conn. 82, 510 A.2d 172 (1986) (Brookfield police officer investigated parked car in neighboring town of Bridgewater and defendant was arrested by state police, after investigation by Brookfield police officers, for crimes of criminal possession of cocaine and possession of cocaine with intent to sell); see also *State* v. *Stevens*, 224 Conn. 730, 620 A.2d 789 (1993) (Connecticut police officer may obtain evidence outside this state after lawful arrest in Connecticut); *State* v. *Pierce*, supra, 67 Conn. App. 634; *State* v. *Andrews*, 33 Conn. App. 590, 637 A.2d 787, cert. denied, 229 Conn. 908, 640 A.2d 121 (1994).

The facts of *Andrews* are similar to those in the present case. In *Andrews*, the defendant was stopped in Derby by an off-duty Shelton police officer for suspicion of operating a motor vehicle while under the influence of intoxicating liquor. *State* v. *Andrews*, supra, 33 Conn. App. 593. The off-duty officer was out of his jurisdiction and also happened to be a member of a volunteer fire department. Id. He signaled the defendant to stop his vehicle by utilizing a blue flashing fire department light. Id. The officer took no action other than to ask the defendant to wait and called the Derby police department to respond to the scene. Id., 594. This court held that the stop did not violate the fourth amendment

to the United States constitution. Id., 598. This court relied on the finding by the trial court that the Derby police had arrested the defendant, not the off-duty extraterritorial officer. Id., 599.

The defendant in the present case was not arrested by an off-duty extraterritorial police officer, but was stopped by an extraterritorial police officer who was on duty. The detention of the defendant in the present case did not violate the statutory provisions of § 54-1f because the detention was not an arrest. Furthermore, the subsequent prosecution of the defendant would not be prohibited even if the stop had been illegal. See *State* v. *Miller*, supra, 227 Conn. 370; *State* v. *Fleming*, supra, 198 Conn. 262–63. The extraterritorial officer's investigation of the defendant's driving behavior and the stop thereafter did not violate the Connecticut constitution. *State* v. *Miller*, supra, 377. The court's denial of the defendant's motion to suppress, on the basis of the facts of this case, was proper.

The judgment is affirmed.

In this opinion the other judges concurred.